**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **Donald Dwayne Heffner,** | ) | **Case No. 2:16-cv-820-TMC-MGB** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **Commissioner, Social Security Admin.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

Plaintiff, through counsel, seeks judicial review of a partially unfavorable final administrative decision on his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), pursuant to Titles II and XVI of the Social Security Act ("SSA"). See 42 U.S.C. § 405(g). The Commissioner granted disability benefits for the closed period March 21, 2011 through December 31, 2012, but found that Plaintiff had improved after recuperating from back surgery on August 6, 2012, and was no longer disabled as of January 1, 2013. Plaintiff challenges the discontinuation of benefits as of January 1, 2013. Pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a) (D.S.C.), this matter was referred to the United States Magistrate Judge. Having carefully considered the parties' briefs, the administrative record, and applicable authority, the Magistrate Judge recommends that the Commissioner's final decision be **_affirmed_**, based on the following proposed findings of fact and conclusions of law:

**I.** **Relevant Statutory Law**

A claimant for disability benefits bears the burden of proving disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). As the ALJ correctly indicated (AR 14-15), the Social Security regulations set forth a five-step sequential process. 20 C.F.R. §§ 404.1520(a), 416.920(a). To be entitled to benefits, the claimant "(1) must not be engaged in substantial gainful activity, i.e., currently working; and (2) must have a severe impairment that (3) meets or exceeds the listings of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform his past work or (5) any other work." *Albright v. Comm'r*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The claimant bears the burden of production through the fourth step. "If the claimant reaches step five, the burden shifts to the government." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).

When a person is awarded disability benefits, the SSA regulations require that "continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. § 404.1594(a). Typically, a "termination" hearing is held at which the ALJ must determine whether medical improvement has occurred, and, if so, whether such improvement is related to the claimant's ability to work. *Id.*; 42 U.S.C. § 423(f).

In cases where benefits are awarded only for a specific time period, the case is referred to as a "closed period" case. In deciding when the closed period should end, the federal circuits that have considered the issue have held that the medical improvement regulations apply. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1274 (3d Cir. 1987); *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002); *Jones v. Shalala*, 10 F.3d 522, 523–24 (7th Cir. 1993); *Shepherd v. Apfel*, 184 F.3d 1196, 1198 (10th Cir. 1999); *Pickett v. Bowen*, 833 F.2d 288, 293 (11th Cir. 1987). District courts within the Fourth Circuit agree. *See McKenzie v. Colvin,* Case No. 9:14-4816-RMG-BM, 2016 WL 182924, *7 n.6 (D.S.C. Jan. 4, 2016), *adopted by* 2016 WL 183907 (D.S.C. Jan. 14,

2016); *Small v. Astrue*, 2009 WL 3029737, *10 (E.D.N.C. Sept. 22, 2009); *McDaniel v. Astrue*, 2009 WL 929555, *3 n.3 (M.D.N.C. Apr. 3, 2009).

Additionally, Social Security Ruling ("SSR") 02–1p indicates the medical improvement regulations are appropriate guidelines for determining when the closed period ends. See SSR 02–1p, 2000 WL 628049, *10 n. 2 (Sept. 12, 2002) ("[w]e use separate sequential evaluation processes when we do continuing disability reviews; i.e., reviews to determine whether individuals who are receiving disability benefits are still disabled or when we determine whether an individual has a closed period of disability"), citing 20 CFR 404.1594, 416.994, and 416.994a.

In the present case, the ALJ correctly cited the medical improvement regulations in deciding when the closed period ended. (AR 15-16). As the ALJ indicated, the regulations provide an eight-step sequential process for DIB claims and a seven-step process for SSI claims. (*Id.*, citing C.F.R. §§ 404.1594(f), 416.994(f)). For a DIB claim, the ALJ first assesses whether the claimant is engaging in substantial gainful activity.[1] For an SSI claim, this is not a factor to consider.[2] The remaining sequential steps for both types of claims are the same. The ALJ considers: 2) whether the claimant has an impairment or combination of impairments that meets or equals a listing, 20 C.F.R. §§ 404.1594(f)(1)-(2), 416.994(f)(1)-(2); 3) whether medical improvement has occurred, 20 C.F.R. §§ 404.1594(f)(3), 416.994(f)(3); 4) whether the medical improvement is related to the claimant's ability to work, 20 C.F.R. §§ 404.1594(f)(4), 416.994(f)(4); 5) whether any exceptions to medical improvement apply, 20 C.F.R. §§ 404.1594(f)(5), 416.994(f)(5); 6) whether the claimant's current impairments in combination are "severe," 20 C.F.R. §§ 404.1594(f)(6),

---

[1] To be eligible for DIB benefits, a claimant must have accumulated at least 20 quarters of coverage during the 40 quarter (ten year) period ending with the quarter in which benefits are sought. 20 C.F.R. § 404.130(b).

[2] Eligibility for SSI benefits is based on a claimant's financial need, and his income may not exceed certain dollar amounts. 42 U.S.C. § 1382(a). *See, e.g., Tillackdharry v. Comm'r*, 2006 WL 903191, *4 (S.D.N.Y. April 10, 2006).

416.994(f)(6), and if so, what functional capacity (RFC) the claimant has; 7) whether the claimant can perform past relevant work; 8) and if not, whether the claimant can perform other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1594(f)(7-8), 416.994(f)(7-8). If the claimant can perform other work, he is no longer "disabled" for purposes of the SSA. 20 C.F.R. §§ 404.1594(f)(8), 416.994(f)(8).

## II. **Background**

The facts have been fully set forth in the ALJ's decision (AR 13-31) and in the parties' briefs (DE# 7, 8), and need only be summarized here. Plaintiff was born November 26, 1977 and was age 33 ("younger") on March 21, 2011, when he allegedly became disabled. See 20 C.F.R. § 404.1563 (defining "younger" as age 18-49). Plaintiff has a limited education (i.e. completed tenth grade). See 20 C.F.R. § 404.1564. He communicates in English, is married, and lives with his family (wife, two minor sons, and father-in-law). (AR 42, 193, 227, 229). Plaintiff alleges he suffered a work-related back injury on March 11, 2011 while working as a janitor. He indicates he lifted a "heavy trashcan" and "felt a pop and pain in his back." (*Id.*). He ceased work eleven days later on March 21, 2011. Plaintiff underwent back surgery (i.e. a microdiscectomy on the left side at L4-5 and on the right side at L5-S1), respectively in March and April of 2011.[3]

Plaintiff settled a Worker's Compensation claim for $35,000.00 on July 23, 2011. (AR 218-21, Ex. 7D).[4] According to Plaintiff, he had actually injured his back the previous year on March 31, 2010, although he did not report such injury to his employer until almost a year later.

---

[3] Microdiscectomy is defined as "a minimally invasive surgical procedure in which a portion of a herniated nucleus pulpolsus is removed by way of a surgical instrument or laser while using an operating microscope or loupe for magnification." See https://en.wikipedia.org/wiki/Discectomy.

[4] The ALJ noted in his decision that "workers' compensation offset provisions at 20 C.F.R. § 404.408 may be applicable." (AR 31).

(AR 218). Plaintiff worked until March 21, 2011. (AR 203-207, 229, showing earnings of $3,704.87 during January-March of 2011 while employed by Supreme Maintenance).

On February 16, 2012, Plaintiff filed applications for DIB and SSI benefits, alleging disability as of March 21, 2011, due to back problems, hip pain, leg twitches, and depression. (AR 228, Ex. 2E/2).[5] The applications were denied initially and on reconsideration. Although Plaintiff listed depression in his "disability report," he indicated he was not taking any medication for depression and had not sought or received any treatment for it. (AR 231, Ex. 2E/5). The agency "Disability Determination Explanation" (dated 5/24/2012) indicated that Plaintiff "attributes all limits to physical" and that any depression was "secondary to back pain." (AR 63).

While his disability applications were pending, Plaintiff had a laminectomy at L5-S1 on August 6, 2012 performed by neurosurgeon Dr. Phillip Toussaint, M.D. At a post-op check-up on September 26, 2012, Dr. Toussaint indicated that any residual back issues could be conservatively managed and that Plaintiff should come for a final check-up in six months on March 20, 2013. At the six month check-up, Plaintiff was released from Dr. Toussaint's care. Thereafter, Plaintiff's primary care was with a nurse practitioner, who saw Plaintiff largely for periodic check-ups and medication refills. Plaintiff sought no other treatment.

Plaintiff indicates that his activities of daily living include watching his two young boys while his wife works, taking care of his personal needs (such as bathing and dressing), performing light household chores (such as cooking some meals and washing dishes), watching television, folding laundry, and taking care of his own medication. (AR 47-51, hearing testimony on 6/12/2014; AR 251-53, report 3/12/2012). Plaintiff has a driver's license and occasionally drives his car to the store. (AR 50, 252). With respect to shopping, the evidence indicates that Plaintiff is

---

[5] The Social Security agency noted "multiple Social Security numbers involved" and "please investigate." (AR 206).

able to correctly handle a cash transaction and count change. (AR 62, 4/23/2012). Plaintiff gets along well with other people and spends time with them. (*Id.*). Although Plaintiff claimed that he was no longer able to go fishing after his alleged onset date of March 21, 2011, Plaintiff went to the ER on October 8, 2011 and told medical providers that he sustained a 1.5 centimeter laceration while "fishing" that day. (AR 300-02, noting patient reports that "injury occurred while fishing").

Meanwhile, Plaintiff requested an administrative hearing. Administrative Law Judge Clinton C. Hicks ("ALJ") further developed the record by ordering a comprehensive medical evaluation by consulting examiner Dr. Harriet Steinert, M.D. (Ex. 5F, examination on 4/18/2012). The record also contains multiple independent medical reviews and functional assessments by state agency physicians and psychologists. See AR 28-29 (for ALJ's discussion of reports by Dr. Matthew Fox, M.D; Dr. Carl Anderson, M.D.; Dr. Xanthia Harkness, PhD; and Dr. Kimberly Brown, PhD). See Exs. 1A, 2A (May 2012) and Exs. 6A, 7A (October 2012).[6] Plaintiff submitted medical records, including opinions from Dr. Toussaint and nurse practitioner Terry Sims ("NP Sims"). (Exs. 11F, 12F).

At the administrative hearing on June 12, 2014, Plaintiff (represented by legal counsel) and a vocational expert ("VE") both testified. When the ALJ questioned Plaintiff about his activities of daily life, Plaintiff testified that he mostly sits on the couch and watches television. (AR 47, Q: What do you do during the day? A: I just --- I sit on the couch and watch tv.). The ALJ observed that Plaintiff's work history was "not strong" even prior to the alleged onset of disability. (AR 52). When the ALJ asked Plaintiff to explain this, Plaintiff testified that he had been working for cash "under the table" since age 16 and did not report his earnings. (AR 52-53, "I worked for my uncle.

---

[6] For a detailed discussion of the difference between the RFC assessment, which is an administrative finding of fact, and the opinion evidence called the "medical source statement" or "MSS," see SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner."

He paid me under the table. So that's why it ain't on there….I started with him when I was 16."). The ALJ then asked "how much money do you think is not reported?" (AR 52). Plaintiff responded that he had been making $10 an hour and admitted that he had "made a good little bit" doing this, but could not give an exact amount. (*Id.*).[7] In addition to his unreported earnings, Plaintiff had some reported earnings from working as a dump truck operator (medium, unskilled), loader (heavy), painter (medium, skilled), custodian (medium, unskilled), and packer/extruder of stainless steel pipes for catalytic converters (not classified). (AR 42-44, 52-54, 236-246; see Ex. 3E). However, due to the Plaintiff's limited earnings from such reported work, the ALJ found that none of it "rose to the level of substantial gainful activity." (AR 25).

At the hearing, two hypothetical questions were posed. First, the ALJ asked the VE to consider a hypothetical person "whose age ranges from 33 to 36 who can do a full range of sedentary work, except [he] would be limited to simple, routine, repetitive tasks; can use a cane to ambulate, but does not need it at the workstation; he also … would sit for 45 minutes with and stand for 2 [hours] in place, alternating throughout the day." (AR 54-55).[8] In response, the VE testified that there were sedentary jobs within those restrictions, such as: 1) food and beverage order clerk (sedentary, unskilled, with 200 jobs in South Carolina and 17,300 jobs nationally); 2) nut sorter (sedentary, unskilled, with 315 jobs in South Carolina and 15,300 jobs nationally); 3) electronics assembler (sedentary, unskilled, with 1,240 in South Carolina and over 57,000

---

[7] The ALJ could properly rely on Plaintiff's poor work history and failure to report "under the table" earnings when finding Plaintiff's allegations not fully credible. 20 C.F.R. § 416.929(c)(3); *and see Thomas v. Comm'r*, 278 F.3d 947, 954 (9th Cir. 2002) (claimant's work history, or lack thereof, may support an adverse credibility determination); *Evans v. Colvin,* 2016 WL 7852485, *6 (E.D.N.C. Dec. 21, 2016), *adopted by* 2017 WL 244817 (E.D.N.C. Jan. 19, 2017) (upholding ALJ's credibility determination where Plaintiff had received income "under the table" for several years); *Amundson v. Colvin*, 2014 WL 4162527, *11 (D.Oregon Aug. 18, 2014) (same).

[8] Plaintiff testified in 2014 that he used a cane, but acknowledged that no doctor had prescribed one. (AR 51). In any event, the ALJ included the use of a cane in the RFC for the period beginning January 1, 2013. (AR 26). The ALJ also provided for a "sit-stand" option. See SSR 96-9p.

nationally). (AR 55). Plaintiff's counsel then posed a second more restrictive hypothetical question adding the following restrictions: "an inability to sit more than an hour in an eight-hour day; walk and stand more than [an] hour in an eight-hour day; no pushing or pulling; and no lifting more than zero to five pounds occasionally." (AR 56). Counsel did not add any mental restrictions to his hypothetical question. The VE testified that, with those restrictions, there would be no jobs available. (AR 56, "It would rule out those jobs that I cited as well as any competitive full-time employment.").

The ALJ issued a decision on September 25, 2014. (AR 13-31). First, the ALJ found that Plaintiff was disabled for the closed period of March 21, 2011 to December 31, 2012, concluding at step five that there were no jobs for a person with an RFC consistent with counsel's more restrictive hypothetical question. (AR 25, Findings 10, 11). Plaintiff does not challenge this part of the ALJ's decision.[9] Second, the ALJ found that Plaintiff's back issues had medically improved post-surgery and that the improvement was work-related (AR 26, Findings 14-15). The ALJ found that, as of January 1, 2013, Plaintiff was able to perform sedentary work within certain restrictions (AR 26-27, Finding 16, assessing RFC consistent with the ALJ's hypothetical question). After proceeding through the remaining steps under the improvement regulations (AR 26-30, Findings 17-21), the ALJ concluded at the final step that Plaintiff was no longer disabled as of January 1, 2013. (AR 30, Finding 22). The Appeals Council denied further review (AR 1-3), and the ALJ's decision is the Commissioner's final decision.

## III.  Standard of Review

Judicial review of the Commissioner's final decision is limited to: (1) whether the Commissioner applied the correct legal standards; and 2) whether substantial evidence supports

---

[9] The ALJ granted benefits for the closed period, and the parties do not challenge the decision regarding the closed period.

such decision. 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). A reviewing court must "uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 637–38 (4th Cir. 1996); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). The reviewing court may not re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. It is the duty of the Commissioner, not the courts, to make findings of fact and resolve conflicts in the evidence. *Id.*; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("the court does not find facts or try the case *de novo* when reviewing disability determinations"). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV. <u>Discussion</u>

### A. <u>Medical Improvement and RFC (as of January 1, 2013 and forward)</u>

Plaintiff challenges the ALJ's decision that Plaintiff had medically improved post-surgery so that, as of January 1, 2013, he was able to perform a limited range of sedentary work. (DE# 7

at 1). The Commissioner responds that the ALJ's decision, including his findings as to medical improvement and RFC, is supported by substantial evidence. (DE# 8 at 1).

The Social Security regulations provide that:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. §§ 404.1594(b), 404.1528.

For 2013 forward, the ALJ found the same impairments (i.e., degenerative disc disease of the lumbar spine with radiculitis, status post multiple surgeries, hypertension, GERD,[10] and bi-polar/generalized anxiety disorder) as during the closed period (AR 26, Finding 12). The ALJ indicated that (for January 1, 2013 and forward) the evidence showed improvement in the symptoms for Plaintiff's back impairment, and that the other impairments had remained relatively stable since the disability onset date in 2011. (AR 26-27). The Fourth Circuit has emphasized that "disability is not determined merely by the presence of impairments, but rather on the resulting functional limitations experienced by the claimant." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (explaining that "a condition or diagnosis may remain permanent, while the symptoms and extent of limitations from that condition may improve"); *Cuffee v. Berryhill*, 680 F.App'x 156, 2017 WL 715070, *4 (4th Cir. Feb. 23, 2017) (affirming denial of DIB and SSI benefits where claimant had improved functionally after corrective surgery and was no longer disabled).

The ALJ observed that Plaintiff's GERD and hypertension were relatively well-controlled with medication and did not cause any significant functional limitations. (AR 21, citing Ex. 7F/3,

---

[10] "GERD" is an acronym for gastroesophageal reflux disease. See http://www.webmd.com/heartburn-gerd/guide ("In most cases, GERD can be relieved through diet and lifestyle changes.").

13F/2-3, 18F/2, 7-9, 46-48). Similarly, in 2013-2014 Plaintiff was prescribed medication (including for mental impairments), which admittedly helped his symptoms and improved his functioning.[11] (AR 435, noting that "activities of daily living improve with medication"). *See Gross*, 785 F.2d at 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). The ALJ cited medical evidence from 2013-2014 (i.e. notes from check-ups) which repeatedly indicated that Plaintiff was reporting "no depression, no anxiety." (AR 26, citing Exs. 16F-18F).

The ALJ indicated that his decision was based on improvement in the symptoms of Plaintiff's back impairment as of January 1, 2013. Substantial evidence supports such determination. The ALJ explained that, after Plaintiff's surgery on August 6, 2012, the evidence showed that Plaintiff had "recovered well from that surgery." (AR 26, Finding 14). The ALJ discussed the medical evidence, indicating that "the following month, the motor functioning in his lower extremities had returned to normal, and he has not shown deficits in strength, sensation, or reflexes since that time." (AR 26, citing Exs. 16F at 2-3; 17F at 2-4; 18F at 2, 7-9, 12-13, 17-18, 23, 25-41, 43-60). The ALJ cited medical records, including notes from the post-op visit on 9/26/2012, where Dr. Toussaint indicated "at this point, I would manage his symptoms conservatively." (AR 426). Dr. Toussaint prescribed medication and scheduled a follow-up visit in six months. Plaintiff sought no other care. *See Johnson*, 434 F.3d at 658 (the failure to seek help constitutes a reason for discounting subjective claims). The ALJ found that Plaintiff's allegations (2013 forward) were not fully credible. "When a claimant complains that his alleged disability is so bad that he is unable to work in any job whatsoever, but the ALJ finds that the treatment was

---

[11] Plaintiff reported to consulting examiner Dr. Steinert that he had sought no treatment and took no medication for any mental symptoms. (AR 339, examination on 4/12/2012).

not as aggressive as one would reasonably think would be employed if the alleged disability were actually that severe, then it is reasonable for the ALJ to conclude that the conservative treatment bears on the claimant's credibility." *Dunn v. Colvin*, 607 F.App'x 264, 276, 2015 WL 3451568 (4th Cir. 2015) (affirming denial of benefits).

At the follow-up visit on March 20, 2013, Dr. Toussaint observed "good motor function in the bilateral lower extremities" and "appropriate attention span." (AR 427). Dr. Toussaint's notes indicate that Plaintiff reported that his right leg was giving him "little pain." This reflects improvement over Plaintiff's pre-surgery complaints. *See McKenzie v. Colvin,* Case No. 9:14-4816-RMG-BM, 2016 WL 182924, *7 n.6 (D.S.C. Jan. 4, 2016) (the disability onset date is generally the "point of comparison"), *adopted by* 2016 WL 183907 (D.S.C. Jan. 14, 2016); *see Sagastume v. Colvin*, 2015 WL 5735488 (D.Md. Sept. 29, 2015). Although Plaintiff complained of left hip pain, Dr. Toussaint examined Plaintiff and indicated "I do not recommend any further surgical intervention." (AR 427). The ALJ reviewed the evidence showing that Plaintiff then saw a nurse practitioner periodically for check-ups and medication refills.

After considering all the evidence, including any allegations of pain, the ALJ determined that beginning January 1, 2013, Plaintiff had the RFC to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is limited to simple, routine, repetitive tasks. He must use a cane to ambulate, but it is not needed at the workstation. He can sit for 45 minutes, and stand for two minutes in place, alternating throughout the workday.

(AR 26-27, Finding 16). RFC refers to the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a). The RFC assessment is based upon all of the relevant evidence, including the medical records, medical source opinions, and the person's subjective allegations and

description of his own limitations. *Id*. The final responsibility for determining a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2-3).

Plaintiff argues that the ALJ erred "in finding an expansion of [his RFC] as of January 1, 2013" (DE# 7 at 1). The Commissioner responds that the ALJ's decision regarding increased RFC (January 1, 2013 forward) is supported by substantial evidence. (DE# 8 at 1).

Under SSA regulations, an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR No. 96–7p, 1996 WL 374186, *7; *Abdus-Sabur v. Comm'r*, 2009 WL 5178439, *5, n.1 (E.D.N.Y. Dec. 31, 2009). The ALJ appropriately found that the evidence did not support the extent of pain and resulting functional limitation alleged by Plaintiff. *See Hutchinson v. Astrue*, 2012 WL 1267887, *8 (M.D.N.C.) ("the issue … is not whether Plaintiff's pain exists; it undoubtedly does and the ALJ so acknowledged…[the issue is whether the ALJ considered the record as a whole and properly determined] that the extent and limiting effects of that pain were not as great as he claimed").[12]

The ALJ observed that, after Plaintiff's surgery on August 6, 2012, Plaintiff had not sought any medical treatment for many months, and when he did, the treatment consisted only of routine check-ups with a nurse practitioner who provided medication refills. The ALJ considered (and specifically cited) the medical evidence from 2013-2014. The ALJ explained that "since January 1, 2013, physical examinations of the claimant have been normal aside from gait disturbances and difficulties with straight leg raising." (AR 29). He also considered Plaintiff's hearing testimony and activities of daily living. The ALJ explained that Plaintiff's activities of daily living suggested

---

[12] A new ruling, SSR 16-3p, has superseded SSR 96-7p. However, the new ruling applies only to cases decided after its effective date of March 28, 2016. See 81 Fed. Reg. 15776-01, 2016 WL 1131509; *Kurowski v. Colvin*, 2013 WL 5306649, *2 (E.D.Va. Sept. 18, 2013) (holding that a new SSR applies only on or after its effective date); *Ashmore v. Colvin*, Case No. 11-cv-2865-TMC-PJG, 2013 WL 837643, *3 n.4 (D.S.C. Mar. 6, 2013) (same).

that Plaintiff was able to meet the minimal exertional requirements of sedentary work, which is the least physically demanding level of exertional work.

The medical records from 2013-2014 cited by the ALJ supported his determination of an RFC for basic work activities at the sedentary level. (AR 26, Finding 15). For example, the notes from 5/1/2013 indicate: "Problems: none recorded. Chief complaint: checkup, med refilled." (AR 432, noting "occasional exercise"). Similarly, the notes from 5/29/2013 reflect another routine check-up and refill. Upon examination, NP Sims found "no weak limbs, no tingling, no numbness of the legs/feet" and indicated that Plaintiff was "healthy appearing, well-nourished, and well-developed." NP Sims's notes indicate that although Plaintiff complained of some leg pain, he was "ambulating normally" (AR 436). Plaintiff acknowledged that his ability to engage in activities of daily living had improved with medication. (AR 435).

In the notes from 10/30/2013, NP Sims again found Plaintiff to be "healthy appearing, well-nourished, and well-developed," normal mood and affect, memory normal, good judgment, motor strength and tone are normal, but using a cane (irregular gait), sensation grossly intact. (AR 461-462). In the notes from 2/26/2014, NP Sims observed no swelling in the extremities, normal mood and affect, active and alert, neck supple, full range of motion, normal motor strength and tone, but again, using a cane. (AR 475-76, noting unable to perform straight leg raises). The notes on 3/1/2014 indicate "no exercise intolerance or generalized weakness, no joint or back pain, no weakness, numbness, tingling, no nocturnal leg discomfort, no fatigue, neck supple/FROM, normal motor strength and tone," but can't perform straight leg raises. (AR 478-79). In fact, some of the notes cited by the ALJ indicate that Plaintiff was reporting no back pain in 2014. (See AR 483-84, 3/26/2014 notes, finding normal motor strength and tone upon examination, patient reporting no back pain; AR 485-487, 4/24/2014 notes indicating "no back pain, neck supple").

As for any mental impairment, the ALJ cited notes from various check-ups in 2014 that repeatedly indicated Plaintiff took medication which helped and that he was reporting normal mood with "no depression, no anxiety" (AR 478-79, 3/1/2014 "normal mood, oriented 3x;" AR 479, 3/13/2014 notes, "no depression;" AR 494, 3/26/2014 notes, "no depression," Plaintiff says he "feels better"). *See, e.g., McCullough v. Colvin*, Case No. 1:12–208–MGL-SVH, 2013 WL 2285919, *5 (D.S.C. May 23, 2013) (the ALJ "properly considered Plaintiff's improvement while on medication"); *Foskey v. Colvin*, 2014 WL 1903340, *10 (E.D.Va. April 30, 2014) ("objective medical records showed that … compliance with medication regimens alleviated symptoms").

The ALJ observed that NP Sims has "noted at most, mild deficits in attention and concentration." (AR 29). The ALJ also referred to the opinions of state agency reviewers who had previously indicated that Plaintiff could maintain attention and concentration for two hour periods. (AR 24, 29, discussing opinions of Drs. Harkness and Brown and giving both significant weight).[13] The ALJ also discussed Plaintiff's reported activities of daily living. (AR 28, observing that Plaintiff can "prepare meals and do some chores around the house, which suggest that he can meet the lifting and carrying demands of sedentary work"). The Commissioner points out that the ALJ properly considers medical records as well as daily activities in formulating the RFC. (DE# 8 at

---

[13] The ALJ's decision (9/25/2014) was prior to *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (a restriction to simple, routine tasks or unskilled work does not account for a claimant's limitations in concentration, persistence, or pace). *Mascio* was factually distinct from the facts of the present case, and neither party here has argued *Mascio* in their 2016 briefs. Moreover, the Fourth Circuit noted that an ALJ may permissibly "find that the concentration, persistence, or pace limitation does not affect [claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical." *Id*. Here, with respect to 2013 forward, the ALJ specifically pointed to 2013-2014 evidence, including that Plaintiff was able to attend regular appointments, at which NP Sims "noted at most, mild deficits in attention and concentration." (AR 29). In 2013, Dr. Toussaint also found that Plaintiff had "appropriate attention span." (AR 28, citing Ex. 17F). In light of such evidence, the ALJ did not mention any deficits in attention and concentration in his hypothetical. This Court is not left to guess about how the ALJ arrived at his conclusions, and the present decision does not appear to implicate *Mascio*. *See, e.g., Davis v. Colvin*, C.A. No. 0:14-cv-4314-TMC-PJG, 2015 WL 7871172 (D.S.C. December 4, 2015) ("Davis's reliance on *Mascio* is unavailing in this case"); *Falls v. Colvin*, 8:14–CV–195–RBH, 2015 WL 5797751, *7 (D.S.C. Sept. 29, 2015) (finding remand unwarranted, where ALJ found claimant could do simple, routine, repetitive tasks for two hour periods in an eight hour day").

14-15, citing SSR 96-8p, 1996 WL 374184). The ALJ then relied on testimony from the VE and found that there were representative unskilled sedentary jobs that existed in the national economy that Plaintiff could perform. (AR 29-30). Substantial evidence supports the ALJ's decision.

## B.  The Opinions of Dr. Toussaint and NP Sims

Plaintiff argues that the ALJ erred "in failing to honor the Treating Physician Rule" with respect to the opinions of Dr. Philip Toussaint and Nurse Practitioner Terry Sims. (*Id.* at 10-7).

To be given controlling weight, a treating source's opinion must be well-supported by medical signs and laboratory findings and consistent with the other substantial evidence of record. 20 C.F.R. § 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). When evaluating medical opinions, an ALJ considers factors, including: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the claimant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson*, 434 F.3d at 654); SSR 96–2p; 20 C.F.R. §§ 404.1527, 416.927. Generally, the more the physician presents relevant evidence to support the opinion, and the better the physician explains it, the more weight such opinion is given. 20 C.F.R. § 404.1527(d); 20 C.F.R. § 404.1527(c)(3) (providing for greater weight where a medical opinion is supported by relevant evidence, particularly medical signs and laboratory findings). The nature and extent of a treatment relationship affects the weight given by an ALJ. 20 C.F.R. §§ 404.1527(d)(2)(ii), 416.927(d)(2)(ii). Opinions by physicians on the ultimate issue of whether a plaintiff is "disabled" for purposes of the SSA are not given controlling weight because the decision on that issue is reserved to the Commissioner alone. 20 C.F.R. § 416.927(d); 20 C.F.R. § 404.1527(e).[14]

---

[14] The SSA's medical evidence rules were revised, effective March 27, 2017 (see 82 Fed. Reg. 5844), but the revised rules apply only to applications filed on or after that date. The present Plaintiff's disability applications were

## 1. **Dr. Toussaint's Statement on 3/20/2013**

Plaintiff argues that the ALJ did not give appropriate weight to an opinion of treating physician Dr. Toussaint. (DE# 7 at 6-7). As already discussed, Dr. Toussaint performed a laminectomy on Plaintiff in August 2012, and then saw Plaintiff for a post-op check-ups in September 2012 and March 2013. Dr. Toussaint provided a brief statement on 3/20/2013. (DE# 427). Dr. Toussaint indicated that Plaintiff reported that "the right leg gives him little pain," but said his main complaint was left hip pain, which he described as "persistent and debilitating." (*Id*.). Dr. Toussaint indicated that he examined Plaintiff and found him to be "awake, alert, and interactive. His speech is fluent, and attention span is appropriate. He has good motor function in the bilateral lower extremities. He ambulates with a severe limp." (*Id*.). Dr. Toussaint indicated that he believed Plaintiff "will not be able to return to his previous job of being custodian." (*Id*.).

The ALJ observed that Dr. Toussaint's opinion failed to explain any specific functional limitations, was vague and conclusory, and opined on an issue reserved to the Commissioner. (AR 23). Although the ALJ gave the opinion "some" weight for the closed period (which is not at issue here, as Plaintiff does not challenge the grant of benefits for the closed period), the ALJ explained that Dr. Toussaint's opinion was inconsistent with medical evidence from January 1, 2013, through September 25, 2014 (including Dr. Toussaint's own medical notes and NP Sims' subsequent records), and therefore, the ALJ appropriately gave it little weight for that subsequent period. (AR 28-29). *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) ("if a physician's opinion is not

---

filed on February 16, 2012, prior to the effective date of the revised rules. The revised rules are intended to: 1) redefine and reorganize some terms regarding evidence; 2) revise the rules about acceptable medical sources (AMS); 3) revise the way the Commissioner considers medical opinions and prior administrative medical findings; 4) revise the rules about medical consultants (MCs) and psychological consultants (PCs); and 5) revise the rules about treating sources. See HALLEX I-5-3-30 (SSA), 2017 WL 1362776, *2 (last updated April 14, 2017); see also Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 ("Rules").

supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

The Commissioner points out that "Dr. Toussaint's March 20, 2013, opinion largely mimics Plaintiff's complaints to him on that date" (DE# 8 at 17, citing AR 427). A physician's work restrictions based on a claimant's subjective statements about his own symptoms are reasonably discounted where (as here), the ALJ finds the claimant less than fully credible. 20 C.F.R. § 404.1529. Additionally, the Commissioner points out that Dr. Toussaint's opinion—that Plaintiff could not work full time—is an opinion on an issue reserved to the Commissioner. (DE# 8 at 16, citing *Martinez v. Colvin*, 2013 WL 5227060, *4 (N.D. Tex. Sept. 16, 2013) ("[c]onclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions"); 20 C.F.R. §§ 404.1527(d)(1)(2), 416.927(d)(1)-(2). Opinions from medical sources stating that a person is disabled are not entitled to any special significance. 20 C.F.R. § 404.1527(d). The ultimate determination of disability is reserved solely to the Commissioner.

The ALJ is not bound by a medical source's opinion, and may discount it, if there is a lack of clinical data supporting it, or if there is contrary medical evidence. See 20 C.F.R. § 404.1527; *Hunter*, 993 F.2d at 35 ("[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Boyd v. Colvin*, Case No. 0:13–cv–00638–TLW-PJG, 2014 WL 4097924, *5 (D.S.C Aug. 18, 2014). Plaintiff told Dr. Toussaint that left hip pain affected his ability to work, and Dr. Toussaint recorded that, as a result of Plaintiff's reported left hip symptoms, he did not think Plaintiff could work full-time. The Commissioner points out that this type of conclusory opinion based on self-reported symptoms (by someone seeking disability benefits) has been soundly criticized by the Fourth Circuit Court of Appeals. *See Craig*, 76 F.3d at 590 n. 2 ("[plaintiff] argues that the fact that [her physician] observed [plaintiff] (when

she complained about the pain) transforms [the physician's] observations into 'clinical evidence.' If this were true, it would completely vitiate any notion of objective clinical medical evidence."). Moreover, Dr. Toussaint's opinion that Plaintiff could not return to work as a custodian says nothing about whether Plaintiff could perform a reduced range of sedentary work. For all these reasons, the ALJ's weighing of such opinion is supported by substantial evidence.

### 2. Nurse Practitioner Terry Sims

Plaintiff also argues that the ALJ "erred in failing to honor the treating clinician opinion" of NP Sims. (DE# 7 at 6-7). Plaintiff indicates that NP Sims was Plaintiff's family clinician beginning in 2012. (*Id.*at 13; AR-335). On July 12, 2012 (prior to Plaintiff's surgery on August 6, 2012), NP Sims at Great Falls Family Medicine indicated he had treated Plaintiff for back pain and right hip pain. He completed a "Multiple Impairment Questionnaire" sent to him by Plaintiff's then-counsel (AR 384-92). On that form, NP Sims checked the most extreme limitations, including an inability to sit, stand, or walk <u>at all</u> during an 8-hour workday (AR 387-88). NP Sims opined that Plaintiff could not lift or carry anything and had marked limitations in the ability to use his fingers/arms/hands for grasping and twisting; fine manipulation; and reaching (AR 389).[15]

Several years later, NP Sims filled out another check-the-box form on May 15, 2014. (AR 490-92). He checked boxes for all the most extreme restrictions, including the mental effects of any pain.[16] For example, NP Sims opined that Plaintiff could not use his hands at all for "simple

---

[15] The Commissioner points out that even during the closed period of disability, Plaintiff did not have such extreme functional limitations. (DE# 8 at 19).

[16] Courts have recognized the "limited probative value" of such check-the-box forms, especially when they lack well-supported explanatory notes. *See, e.g., McGlothlen v. Astrue*, 2012 WL 3647411, *6 (E.D.N.C.); *Shelton v. Colvin*, 2015 WL 1276903, *13 fn.6 (W.D.Va.); *Leonard v. Astrue*, 2012 WL 4404508, *4 (W.D.Va.); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("check-the-box assessments without explanatory comments are not entitled to great weight"); *Foushee v. Colvin*, 2014 WL 6831766, *3 (M.D.N.C.) (describing check-the-box form as "weak evidence"). Here, the ALJ stated specific legitimate reasons for giving such opinion "little weight."

grasping, fine manipulation, or pushing and pulling." (AR 490). The ALJ assigned little weight to this extreme unsupported opinion. (AR 29). Plaintiff contends that under the treating physician rule, the ALJ should have assigned controlling weight to both of NP Sims' opinions.

In the first place, the Commissioner points out that a nurse practitioner is not a "treating physician" under the applicable regulations, but rather, an "other source." (DE# 8 at 19, citing 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)). The ALJ correctly indicated this in his decision. (AR 22). The Commissioner also points out that no medical evidence of record ever suggested that Plaintiff had any functional problems with his hands or was unable to perform fine manipulation. The ALJ appropriately found that NP Sims' opinions were not supported by the medical evidence, including for the period January 1, 2013 forward. Other evidence (such as hearing testimony and disability reports) also tended to undermine NP Sims' extreme opinion.[17]

NP Sims provided no specific explanations and did not mention any diagnostics or test results, he merely referred to "past surgery." The ALJ explained that NP Sims' opinions were inconsistent with the medical evidence, which reflected largely normal post-surgery physical examinations, aside from some gait disturbance and difficulty with straight leg raising. (AR 29). The ALJ also indicated that such opinions were inconsistent with Plaintiff's reported activities of daily living. For example, Plaintiff indicated he was able to wash dishes, fold laundry, and drive a car. NP Sims' own notes indicated "activities of daily living improve with medication." (AR 435).

Although NP Sims opined that Plaintiff could sit for less than one hour, Plaintiff himself testified at the 2014 hearing that he usually sat on the couch all day watching television. The ALJ observed that no treating or examining clinician had ever "observed [Plaintiff] to have trouble

---

[17] In fact, on 3-12-2012, Plaintiff had completed a form, indicating that his impairments did <u>not</u> affect his talking, hearing, seeing, memory, concentration, understanding, following instructions, using his hands, or getting along with others. (AR 254-55). Plaintiff indicated he has a "good" ability to follow spoken instructions and to get along with authority figures. He indicated he could lift "maybe 20 lbs." and "can reach as long as it's not too high or low."

remaining in a seated position during examinations." (AR 28, 47). Although Plaintiff admittedly was able to drive a car, Sims NP opined that Plaintiff should be totally restricted from driving due to "severe mental effects from pain."(AR 491). See 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider whether there are any inconsistencies in the evidence). The ALJ also observed that Plaintiff had been able to attend regular check-ups and engage in a variety of activities. (AR 22, "no treating or examining clinician ever suggested that he was unable to sustain attention during appointments, and he was capable of performing activities, like handling his own medical treatment and driving [a vehicle], that required him to sustain some degree of concentration). The ALJ appropriately found that NP Sims' opinion "that the claimant cannot sustain attention and concentration during the workday, or attend work regularly, are not reasonable." (AR 29). Even Dr. Toussaint observed in 2013 that Plaintiff had "appropriate attention span." (AR 427). The ALJ noted that state agency reviewers Drs. Harknesss and Brown had indicated Plaintiff could understand, remember, and carry out simple instructions, and maintain attention and concentration for 2 hour periods, and relate well to others. (AR 24- 26). The ALJ appropriately gave NP Sims' unsupported extreme opinions very little weight from January 1, 2013 forward. (AR 29). *See Davis v. Colvin*, 2015 WL 404213, *10 (W.D.N.C. Jan. 29, 2015) (finding no error in ALJ's consideration of the opinion evidence).

## V.  Conclusion

In conclusion, the ALJ sufficiently explained the weight assigned to the opinions of Dr. Toussaint and NP Sims, and such findings are supported by substantial evidence. Substantial evidence also supports the ALJ's RFC finding that Plaintiff was able to perform a range of sedentary work within his restrictions. As the ALJ explained, Plaintiff's treatment history and reported improvement did not support a finding of ongoing total disability.

Accordingly, the Magistrate Judge recommends that the Commissioner's final decision is supported by substantial evidence and should be **AFFIRMED**.

**IT IS SO RECOMMENDED.**

August 3, 2017
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

Plaintiff's attention is directed to the following **<u>Important Notice:</u>**